## JOSEPH FLICK ET AL., RESPONDENTS, v. GOLD HILL AND LEE MOUNTAIN MINING COMPANY ET AL., APPELLANTS.

MINES AND MINERALS — *Requirements of recorded notice of location.* — A recorded notice of location of a quartz lode mining claim contained recitals substantially as follows: That the locators were citizens of the United States, or had declared their intention to become such; and that within the limits of the claim, a discovery had been made of a vein, with a crevice of quartz, and one well-defined wall. The dimensions of the claim, with a description by metes and bounds, and a recital that the location was distinctly marked on the ground, so that its boundaries could be readily traced, were also included in the notice. *Held,* that such recitals were not necessary under the mining laws of the United States, and the legislative acts of Montana supplemental thereto.

SAME — *Erroneous instruction — Burden of proof.* — The plaintiffs' recorded declaratory statement, or notice of location of a quartz lode, embraced recitals as to the claim not required by law. The trial court instructed the jury in respect to such declaratory statement as follows: "The jury are instructed that the recorded notice of location of the Justice Lode *prima facie* establishes the facts and matters stated therein; and such matters can only be controverted by a preponderance of credible testimony on the part of the defendants." *Held,* that said instruction was erroneous, for the reason that it improperly shifted the burden of proof as to the due location of the Justice Lode from the plaintiffs to the defendants.

SAME — *"One well-defined wall"* — *Section* 1479, *division* 5, *Compiled Statutes, questioned.* — *Held,* that the statute of the Territory, requiring that there must be a discovery of "a vein or crevice of quartz or ore, with at least one well-defined wall," before a declaratory statement or notice of location of a quartz lode can be recorded, is of doubtful authority, when considered in connection with the prohibition of the Organic Act of the Territory, against the passage of any law by the legislature interfering with the primary disposal of the soil; but that

the doubt expressed should not be construed as conflicting with the decision of *O'Donnell* v. *Glenn, ante,* page 243, upholding the validity of section 1477, division 5, Compiled Statutes, in requiring a declaratory statement of a quartz location to be made under oath.

RECORDS—*Evidence— Unnecessary recitals of facts in recorded instruments— Instruments not required to be recorded.* — *Held,* in the case at bar, that while the rule of law is, that when an instrument is required by law to be recorded, the record itself is the best evidence of the facts stated in the instrument, and the statute of Montana (Comp. Stats. div. 1, § 542) has somewhat extended the same, by placing a certified copy of a record on an equality with an original in respect to its admissibibilty in evidence — nevertheless, the rule does not embrace instruments not required by law to be recorded, nor does it apply to extrinsic facts, which though included in a properly recorded instrument, need not have been inserted therein. (*Moxon* v. *Wilkinson,* 2 Mont. 421, cited.)

INSTRUCTIONS—*Material error.*—A judgment will be reversed when instructions have been granted by the trial court, which are inconsistent and contradictory on a material point.

*Appeal from the First Judicial District, Lewis and Clarke County.*

### STATEMENT.

The plaintiffs recorded declaratory statement of the location of the Justice Lode referred to another mining claim, called the Isabell, as the natural object or permanent monument with reference to which it had been located. The other facts appear in the opinion. The plaintiffs in the case were Joseph Flick, George Travis, George B. Foote, and Harry R. Comly. The defendants were the Gold Hill and Lee Mountain Mining Company, a corporation, and Thomas C. Power, its president.

*E. W. Toole,* for Appellants.

It will be observed that the jury by the instructions were told that the notice of location of plaintiffs was in due form of law and was *prima facie* evidence of its contents. This was tantamount to saying to the jury that plaintiffs, by the introduction of their record notice of location, had established the facts set forth in it, and that it devolved upon defendants to rebut or disprove the same. It therefore absolutely changed the burden of proof, and shifted it from plaintiffs to defendants, upon the most vital and essential points in controversy, i. e., the citizenship of the locators, and that the claim was properly marked out upon its surface so that its boundaries could be readily traced. We respectfully submit that under the mineral land laws of the United States and this Territory, a compliance with said laws

is necessary to give such a possession as will enable a party to maintain an action to quiet title and remove a cloud, or to secure to himself a right of possession which will *enable* him to recover in ejectment; and that instructions which, in their full scope, do not direct the jury that a failure in *any of the four* essentials required under the statutes invalidates the claim, are fatally defective. Citizenship, discovery, location upon the surface, and record are *co-ordinate and independent,* and a failure in *either* is fatal to the claim. The eleventh instruction is wrong in directing the jury that the distance of the claim from the natural object or permanent monument is immaterial, and that if a person was enabled to find the claim, from it (forsooth in a week, month, or year), this was all that is required. But above all we claim, even if the Isabell could be located by a natural object or permanent monument, a description of which is alone to be found in a record, that reference to such a claim requiring resort to another record than that of the claim located to find it is not a compliance with the spirit or letter of law. The law requires the *record itself* to refer to the natural object or permanent monument, and not to the record of another claim that may refer to another, and so on *ad infinitum.* The following authorities will support the positions herein: *Belk* v. *Meagher,* 104 U. S. 279; *Belk* v. *Meagher,* 3 Mont. 65; *Tibbitts* v. *Ah Tong,* 4 Mont. 536; *Noyes* v. *Black,* 4 Mont. 527; *Hauswirth* v. *Butcher,* 4 Mont. 299; *Renshaw* v. *Switzer,* 6 Mont. 464; *Upton* v. *Larkin,* 5 Mont. 600; *Wolverton* v. *Nichols,* 5 Mont. 89; *McBurney* v. *Berry,* 5 Mont. 300. The court could not direct the jury what would constitute such a natural object or permanent monument as would identify the claim. (*Russell* v. *Chumasero,* 4 Mont. 309.) A claim marked by location stakes, etc., might be good as forming a boundary line, but not as an initial point.

*Comly & Foote,* for Respondents.

The preponderance of testimony shows that the Isabell Lode is now, and was at the time of the location of the Justice, a well-known valid location, distinctly marked on the ground with certain and definite corners and boundaries, and that said Isabell Lode was one thousand feet distant. This is a sufficient

permanent monument. (See *Garfield M. & M. Co.* v. *Hammer*, 6 Mont. 53.) The complaint alleges citizenship of the locators. It is not denied by defendants. The testimony of the parties prove citizenship, as also does the notice of location properly verified. In the absence of proof to the contrary, locators are presumed to be citizens, etc. (See *Garfield M. & M. Co.* v. *Hammer*, 6 Mont. 54.) We contend that the instructions of the court taken collectively give all the law properly applicable to this case, and that no error has been committed by the court prejudicial to the appellants. As to the eleventh instruction of the court, to which appellants direct particular attention, we take it to clearly mean that the reference to a natural object or permanent monument required by the law to be inserted in the record — being directory or for the purpose of identifying the claim, merely, and not for the purpose of precisely locating it — need be only such a reference as would enable a person inquiring to identify the claim with the record thereof, and such reference does not necessarily require the degree of precision which is required in locating and marking the corners of the claim. The only decision we have upon this point, and which sustains the view taken by the court below, is the decision in the case of *Garfield M. & M. Co.* v. *Hammer*, 6 Mont. 53. The following cases have been referred to by counsel for appellants, to wit: *Belk* v. *Meagher*, 3 Mont. 65, which relates to relocation and representation, questions not raised in this case. *Tibbitts* v. *Ah Tong*, 4 Mont. 536, in which it is decided that aliens cannot locate or purchase unpatented mineral lands, which question is not raised here. *Noyes* v. *Black*, 4 Mont. 527. It is decided that a valid location is a better right than naked possession. This question does not arise in the case at bar. *Hauswirth* v. *Butcher*, 4 Mont. 299, decides that a location two thousand feet long will not protect claimants from intervening claims of third persons. This question does not enter into the determination of the present case. *Renshaw* v. *Switzer*, 6 Mont. 464, discusses forfeiture for want of representation. This it is conceded is not questioned in case at bar. *Upton* v. *Larkin*, 5 Mont. 600, decides that location before discovery is void. No such point is raised here. *Wolverton* v. *Nichols*, 5 Mont. 89, decides that in this jurisdiction a plaintiff in possession can bring an action

to quiet title. This decision sustains the pleadings of respondents. *McBurney* v. *Berry*, 5 Mont. 300, decides that the notice of location recorded must be in the nature of an affidavit to the facts required by law to be contained therein. Respondents' record is in such form.

DE WOLFE, J. — Action brought to determine the right to the possession of a quartz lode mining claim, in pursuance of section 2326 of the Revised Statutes of the United States. The respondents claim under a location called the Justice Lode, made on the 2d of January, 1884, by George Travis and Joseph Flick, by their agent, Joseph Lutterell, a notice of which location was filed for record in the recorder's office of Lewis and Clarke County, where said lode was situated, on the 8th of January following. The appellants claim under a location made on the 16th of October, 1885, by Elmer E. Brayman, of the Clementh Lode, recorded on the 19th of October, 1885. The allegations and denials were the usual ones in actions of this kind. The cause was tried by a jury, who returned a verdict for the plaintiffs. A judgment and decree were entered accordingly, awarding the possession of the premises to the plaintiffs (respondents in this court). The cause is brought up by appeal from the judgment and order overruling a motion for a new trial, based on errors in instructions given by the court to the jury. We will consider such of these instructions only as we deem necessary to determine the merits of this appeal. Instruction No. 9, given by the court, is as follows: "The jury are instructed that the recorded notice of location of the Justice Lode, *prima facie* establishes the facts, and the matters stated therein; and such matters can only be controverted by a preponderance of credible testimony on the part of the defendants."

The law of Congress (U. S. Rev. Stats. § 2324) prescribes what the record of a lode location shall contain, when a record thereof is required by the local law, and is as follows, as far as it relates to this subject: "All records of mining claims hereafter made shall contain the names of the locators, the date of the location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim." The law of the Territory

which requires a record of lode claims to be filed in the recorder's office of the county in which the location is made, within twenty days after the location, has in no way added to the requirements of the act of Congress above referred to, but only requires the record to describe the claim "in the manner provided by the laws of the United States." (Comp. Stats. Mont. div. 5, § 1477.) The record in this case did contain several statements in addition to those required by the mining act of Congress referred to above. It recites, *first,* that the locators were citizens of the United States, or had declared their intention to become such citizens. This was not a declaration of any certain fact, but stated a fact in the alternative. *Secondly,* it recited the discovery of a vein or lode within the limits of the claim located, with a crevice of quartz or ore, with at least one well-defined wall. *Thirdly,* it gave the dimensions of the claim located, and described the same by metes and bounds, and recited that the location was distinctly marked on the ground so that its boundaries could be readily traced. These several statements contained in the record were, if not superfluous, certainly in addition to the statements required by law to be contained in the record of a mining location. As to the recital that the locators had located a vein or lode with "at least one well-defined wall," it is unnecessary to determine here whether the legislature of the Territory had authority to engraft a requirement of this kind upon the act of Congress governing the location of claims on veins, lodes, or ledges; and whether such an enactment is not in conflict with that section of the Organic Act of the Territory, which prohibits the territorial legislature from passing any law which interferes with the primary disposal of the soil. The legislation is at least of doubtful authority; but whether valid or invalid, like the other recitals of this record above referred to, it was not required to be stated in a location record. Any doubt as to this point is in no respect in conflict with the opinion of this court as to the validity of the territorial law requiring the locators of a lode claim to make affidavit to the notice of location, as decided in the case of *O'Donnell* v. *Glenn, ante,* page 248, decided at the January term of this court. We understand the true rule to be that, when the law requires a record of any instrument, the record itself is

the best evidence of the facts therein stated.   Our statute some-what extends the rule, and makes a certified copy of a record admissible in like manner, and with like effect as the original would be if produced.   (Code Civ. Proc. § 542.)

This familiar principle of evidence does not require a refer-ence to authority to show its correctness; but the rule itself is limited to such facts and instruments as by law are required to be of record, and does not extend to such outside or extrinsic facts, which, though contained in a record, are not required by law.   If this was not so, it would be in the power of any one to manufacture evidence in his own behalf, by putting in a record something outside the requirements of law, and then introducing the record as proof of such fact; such is not, and was never in-tended to be, the rule applicable to official records.   Prior to 1883 there was no law of this Territory requiring a record of placer locations.   In 1876 the case of *Moxon* v. *Wilkinson*, 2 Mont. 421, came before this court on appeal, and one of the errors assigned in the appeal was, the refusal of the court to admit in evidence the record of a placer location; but on this question the court, speaking through Justice Blake, says: "There is no law of the Territory which requires the discoverer of a placer mining claim to make or file for record a statement respecting it.   The instrument purporting to be a record of the ground in dispute by the appellants was not made and filed under the laws of the Territory or the United States, and could not be a legal notice of their rights to the respondents.   It was not a link in the chain of their title, and the court properly excluded it as incompetent evidence." (Referring to the case of *Mesick* v. *Sunderland*, 6 Cal. 315, in support of the doctrine thus laid down.)   Accepting this as a correct statement of the rule of evidence applicable to the admissibility of a record in evidence, and applying the rule to instruction No. 9, it clearly appears that that instruction was too broad and general in stat-ing that the recorded notice of location of the Justice Lode *prima facie* established the facts and matters therein contained, and such facts and matters could only be controverted by a pre-ponderance of credible testimony on the part of defendants. The effect of the instruction was to shift the burden of proof of the due location of the Justice Lode from the plaintiffs to the

defendants, a fact that we have shown was not, and could not be proved by the record of location. It is urged on the part of the respondents that the instructions, taken as a whole, correctly state the law applicable to the case. We will not deny the correctness of most of the instructions which the court gave; but if the correct rule was elsewhere stated in the instructions, the instruction referred to must have been in conflict therewith; and it has been held in many cases that where instructions on a material point are contradictory and inconsistent, the judgment must, on this account, be reversed. In *Brown* v. *McAllister*, 39 Cal. 573, the court says on this point: "When the instructions on a material point are contradictory, it is impossible for the jury to decide which should prevail; and it is equally impossible, after the verdict, to know that the jury was not influenced by the instruction which was erroneous, as one or the other must be, when the two are repugnant." (Referring also to other authorities holding a like principle.)

For the error contained in the instruction mentioned the cause must be reversed and remanded for a new trial.

*Judgment reversed.*

BACH, J., and LIDDELL, J., concur.