SHEPHERD, RESPONDENT, *v.* FIRST NATIONAL BANK, OF BUTTE, APPELLANT.

[Submitted March 20, 1895. Decided April 15, 1895.]

HUSBAND AND WIFE—*Transactions between, how regarded.*—Money transactions between husband and wife, when creditors of the husband are concerned, should be carefully scrutinized, lest the intimate relations of such persons should be the convenient means of working fraud against creditors. But it is not fraud *per se* for a husband to pay his wife a debt which he honestly owes her. (*Lambrecht* v. *Patten*, 15 Mont. 260, cited.)

SAME—*Fraudulent conveyance—Transfer of property by husband in payment of debt to wife.*—Where a husband, being insolvent, and owing both his wife and a bank, paid the debt to his wife in full by deeding to her property of less value than the amount of the debt, which property he obtained by money drawn from the bank, and the bank took no steps to subject the property to its claim until fourteen months after the deed was made, and until a considerable time after full knowledge of all the circumstances, but permitted the husband's overdraft to continue at the bank, and to increase at one

time in the course of business to two thousand dollars in excess of what it was when the first payment was made on the property, this is evidence clearly tending to show that the bank did not regard the transaction as fraudulent during that period, and the transfer of the property to the wife, in such case, was not fraudulent *per se*.

FINDINGS OF JURY—*Vacating and setting aside*.—The exercise of the court's discretion in setting aside the findings of the jury, when they are absolutely and clearly against the evidence, will not be disturbed on appeal.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to remove cloud upon title.    Judgment was rendered for the plaintiff below by McHATTON, J.    Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action in the nature of one to remove a cloud from the title of plaintiff to certain real estate.    On December 9, 1891, the defendant, the bank, commenced an action in the district court against Frederick H. Shepherd, the husband of this plaintiff, praying judgment for the sum of $10,000 and interest.    The bank, as plaintiff in that suit, procured the issuance of a writ of attachment.    Said writ was levied in the manner provided by law upon the interest of defendant therein, Frederick H. Shepherd, in and to the property known as "lot 6, block 32, in the city of Butte."    The legal title of said property was in the name of this plaintiff, Flora E. Shepherd. The deed was made to her.

The bank, by its attachment, took the position that, while the legal title was in Mrs. Shepherd, in fact the defendant Frederick H. Shepherd was the real and equitable owner of said premises.    On the 10th of October, 1890, Patrick Talent owned said premises, and deeded the same to Flora E. Shepherd, under the circumstances as will appear below.    The bank, in its action against Frederick H. Shepherd, obtained judgment against him on the 8th of February, 1892, for $10,508.33. The plaintiff in this action claims that Frederick H. Shepherd never had any interest whatever in said real property, and that the filing of the writ of attachment is a cloud upon her title, which injures the saleable quality of the same.    She asks that the levy of said writ, as against the said real estate, be declared void.

In an answer filed by defendant, the bank, it set up that said Frederick H. Shepherd was indeed the equitable owner of the property described. It was upon this issue that the case was tried.

It appears that Frederick H. Shepherd, about October, 1890, was engaged in the business of buying ores in Butte. He had an overdraft account at the First National Bank. He was buying, selling and shipping ores and drawing money from the bank to pay for ore, and depositing funds therein again as he received returns from his ore sales. On October 10, 1892, his overdraft account was in the neighborhood of $7,000. He claimed that he then had $11,000 worth of ore on his platform. He consulted the cashier of the bank about buying a home. Finally, on October 10, 1892, he bought the house and lot now in controversy. The price was $6,500. He further overdrew his account at the bank in the sum of $4,000, and made a first payment for the premises. The remainder of the consideration was left for deferred payments. Mr. and Mrs. Shepherd both testified that he owed her, on October 10th, about $8,000, without interest. When the purchase of the house and lot was made, the deed from the grantor was made to Mrs. Shepherd. Both the Shepherds testified that this house and lot was a full payment by Shepherd to his wife of the amount which he owed her, up to the time when the title of this house and lot was made to her.

Upon the trial special findings were submitted to the jury, which they answered as follows: "(1) Was Frederick H. Shepherd solvent on the tenth day of October, A. D. 1890? Answer. No. (2) Was Frederick H. Shepherd indebted to Flora E. Shepherd on the 10th day of October, A. D. 1890? Answer. Yes. (3) Did Frederick H. Shepherd and Flora E. Shepherd honestly and fairly agree between themselves that if Frederick H. Shepherd should pay Patrick Talent $6,500 for the property in question that the debt from Frederick H. Shepherd to Flora E. Shepherd should be paid thereby? Answer. No. (4) Has Frederick H. Shepherd any interest in the prop-

erty in question? Answer. Yes. (5) Was the agreement that Frederick H. Shepherd should pay for the property transferred from Patrick Talent to Flora E. Shepherd made for a valuable consideration? Answer. No. (6) Was the deed from Patrick Talent to Flora E. Shepherd taken in the name of Flora E. Shepherd with the intent on the part of Frederick H. Shepherd and Flora E. Shepherd to defraud, hinder, or delay the creditors of Frederick H. Shepherd? Answer. Yes.''

The plaintiff moved to set aside these findings, and to substitute others, and for judgment in her favor. The defendant moved the court to adopt the findings. After consideration for more than a month, the court decided these motions by making the following order:

''The motions of the respective parties to the above-entitled action for judgment having been heretofore argued and submitted, the court this day sustains the motion of plaintiff in so far as to make the following findings:

(1) The court finds, as found by the jury, that Frederick H. Shepherd was insolvent on the 10th day of October, 1890, and said finding is adopted.

(2) The court finds that Frederick H. Shepherd was indebted to Flora E. Shepherd on the 10th day of October, 1890, as found by the jury and said finding is adopted; and the court further finds that said indebtedness exceeded in amount the price paid for the property in question.

(3) The court declines to adopt any of the other findings of the jury.

(4) The court finds that Frederick H. Shepherd and Flora E. Shepherd fairly and honestly agreed between themselves that if the said Frederick H. Shepherd should pay Patrick Talent $6,500 for the property in question, that the debt from said Frederick H. Shepherd to Flora E. Shepherd should be paid thereby.

(5) That Frederick H. Shepherd has no interest in the property in question.

(6) That the deed from Patrick Talent to Flora E. Shepherd was for a valuable consideration, as between said Flora E. Shepherd and Frederick H. Shepherd, and was not taken in her name with the intent on the part of Frederick H. Shepherd and Flora E. Shepherd to defraud the creditors of said Frederick H. Shepherd.

As conclusions of law the court finds:

(1) That all the findings of the jury not herein found and adopted should be set aside, and they are therefore vacated and set aside.

(2) That the plaintiff is entitled to judgment as prayed for in her complaint.

Judgment is hereby ordered accordingly.    Dated December 3, 1892.    John J. McHatton, Judge."

In pursuance of the findings made by the court, the judgment was entered in favor of the plaintiff.    The defendant now appeals.

*Forbis & Forbis,* for Appellant.

*Corbett & Wellcome,* for Respondent.

DE WITT, J.—We are as fully aware now, as we were when we wrote the opinion in *Lambrecht* v. *Patten,* 15 Mont. 260, that money transactions between husband and wife, when creditors of the husband are concerned, should be scrutinized very carefully, lest the intimate relations of such persons should be the convenient means of working a fraud against creditors. The case before us seems to be, perhaps, somewhat a close one, and has received the careful consideration of this court, as well as that of the court below.    The jury found (and the court adopted the findings in this respect) two facts which are not now questioned:    (1) That on October 10, 1890, when Frederick H. Shepherd bought the real estate in question, and had it deeded to his wife, he was insolvent.    (2) At that same time Frederick H. Shepherd was honestly indebted to his wife. The court added to this finding that the debt from Frederick

H. Shepherd to his wife was in a larger sum than the price paid for the real estate. This finding is amply sustained by the testimony. The Shepherds' testimony as to this was very much in detail as to the items and dates and memoranda and vouchers. We are clearly of opinion that this finding cannot be now disturbed.

We next examine the third finding of the jury in connection with the fourth finding of the court. The court's finding set aside that of the jury on this subject. The action of the court in this respect cannot be questioned. Both the Shepherds testified positively that the purchase by Frederick H. Shepherd of the real estate from Talent for $6,500, and the deed of the same to Flora E. Shepherd, was in full payment of the debt owing from the husband to the wife. There was not a syllable of testimony to the contrary The jury arbitrarily disbelieved the Shepherds. The court, on the other hand, believed them. There is nothing whatever in the case by which we can set aside the finding of the court in this respect. Thus we have the third fact in the case.

We now come to the fifth finding of the jury and the first paragraph of the sixth finding by the court. That the court was right in this follows from the view we have just expressed as to the third fact established. Thus we have the fourth fact in the case, namely, that the purchase of the real estate by Frederick H. Shepherd for Flora E. Shepherd was for a valuable consideration.

We next observe the sixth finding by the jury and the latter part of the sixth finding by the court,—that is, the court found, contrary to the finding of the jury, as follows: That the deed from Talent to Mrs. Shepherd was not taken in her name with the intent on the part of Frederick H. Shepherd and Flora E. Shepherd to defraud the creditors of Frederick H. Shepherd.

To recapitulate up to this point, we may state the situation as follows: Frederick H. Shepherd, being insolvent, and owing both the bank and his wife, paid his debt to his wife in

full by delivering to her property of less value than the amount of said debt, which property he obtained by money drawn from the bank. Under these established facts, and in consideration of the further facts in the case, which we will note below, must the district court be reversed in finding that the deed from Talent to Flora E. Shepherd was not taken in her name with the intent by the Shepherds to defraud the bank?

Mr. Shepherd consulted with the bank's cashier as to purchasing the real estate in question, which was a residence and a home. He did not tell the cashier that the deed was to be made to his wife. He owed the bank $7,000 when he bought the house. He had $11,000 worth of ore on his platform. The payment on account of the house of $4,000 ran his overdraft to $11,000. We speak in round numbers in giving these figures. The bank advanced the $4,000 which was paid on the house. The bank people afterwards ascertained that the deed of the house was made to Mrs. Shepherd. It does not appear just when the bank cashier ascertained this fact. He himself, as a witness, did not state. The deed to Mrs. Shepherd was dated October 10, 1890. The bank commenced its action against Shepherd December 9, 1891. Fourteen months elapsed between these dates. Some time during this period of 14 months the bank's cashier ascertained that the deed had been made to Mrs. Shepherd. When he became aware of this fact he did not vigorously, or at all, protest to Mr. Shepherd as to his conduct. He simply spoke to Mr. Shepherd about it, and asked why he had the deed made to his wife. He did not then sue Shepherd. He did not demand or ask from Shepherd that he procure for the bank security upon the real estate for the overdraft. He took no step to subject the real estate to the bank's claim until 14 months after the deed was made, and until at least a considerable time after he knew that the deed was made to the wife. He allowed Shepherd's overdraft to continue at the bank, and to rise and fall in the course of business, and to increase at one time to the sum of $13,000, which was $2,000 more than it was after Shepherd had made his first

payment on the house.    While these facts may not have satisfied the district court that the deed of the house was made to Mrs. Shepherd with the bank's consent, yet they did tend to show to that court that the officers of the bank did not look upon the transaction as a fraud upon the bank.    If the bank had at once, upon the discovery that the deed was made to Mrs. Shepherd, closed Mr. Shepherd's overdraft account, instead of allowing it to increase, and had sued him, and sought to subject the real estate to the payment of their claim, the district court would have had a different showing of a claim by the bank of a fraud by the Shepherds.    Under these circumstances, the district court had evidence which tended to show that the bank did not regard the Shepherd transaction as fraudulent until Shepherd had closed his business in Butte by a sudden departure therefrom.

We will now examine for a moment Mrs. Shepherd's relation to the transaction.    She testified that Shepherd always promised to pay his debts to her when he could, or when he had something "to the good," as they both expressed it.    Now, what was the situation, from Mrs. Shepherd's point of view, on October 10, 1890?    On that date Shepherd owed the bank $7,000, and had $11,000 worth of ore.    Mrs. Shepherd testified that she considered him $4,000 "to the good" at that time; and it is to be observed that $4,000 is the amount which Shepherd then put into the payment on the house.    We cannot say that the district court erred in holding, under these facts, that there was not a fraudulent design between Mr. and Mrs. Shepherd.    All the witnesses to the whole business were before the district court,—both of the Shepherds and the cashier of the bank, who attended to all of the business of the bank,—and also the memoranda and vouchers which Mrs. Shepherd produced.

Frederick Shepherd's situation on October 10, 1890, was this:    He was insolvent, as found by the court; he was overdrawn at the bank $7,000, and owed his wife $8,000, without counting interest; he had $11,000 in ore as assets.    Under

these circumstances he paid one creditor rather than another. This one may do.   Of these two creditors, his wife was pressing for a settlement, and the other creditor, the bank, was not so pressing, but, on the contrary, was extending his credit, and did later extend it $2,000 more than the aggregate sum of $7,000 and $4,000.   The creditor, the wife, agreed, in consideration of the delivery to her of the $6,500 piece of property, to cancel a debt which amounted to $8,000, without counting a large amount of interest.   That was an advantageous settlement for Frederick Shepherd.   That creditor—the wife—was demanding a settlement, and was offering this large discount.   The other creditor, the bank, was not demanding a settlement.   Shepherd paid the importunate creditor, and did not pay the lenient one.   If the creditor the wife had been any other than a wife, we think that the transaction would never have been questioned by any one.

We said in *Lambrecht* v.   *Patten*, 15 Mont. 260:   ''It is not fraud *per se* for a husband to pay his wife a debt which he honestly owes her.''   In the case at bar the district court was evidently of opinion that it must construe the payment to the wife as fraud *per se*, or not fraud at all.   It certainly was not fraud *per se*.   We can concede that the facts in this case, at first sight, demanded a close scrutiny from the district court. We think they were given a very close scrutiny.   The court held the case five weeks after the trial before it made its findings.   The court had had the witnesses before it, and the memoranda and vouchers and papers which had been produced. We cannot say that the district court did not wisely exercise its discretion, in view of all the facts.   On general principles it is not as strong a case for affirmance when the jury finds one way and the court sets aside the findings and reaches an opposite conclusion, as it would be if the jury had found for the plaintiff, and the court had adopted that finding, or if the court had made the findings without a jury.   But in this case, as we have observed above, some of the findings of the jury which the court set aside were absolutely and clearly against the evi-

dence; and, taking the findings which the court finally adopted, we are of opinion that the evidence to sustain them is sufficient to prevent this court from disturbing the discretion exercised below.

The judgment·is therefore affirmed.

*Affirmed.*

HUNT, J., concurs.